UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ARMANDO ORTEGA,<br>        Plaintiff,<br>    v.<br>MARK RITCHIE, et al.,<br>        Defendants. | Case No. 15-cv-04876-HSG (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 23 |

## INTRODUCTION

On October 23, 2015, plaintiff, an insanity acquittee incarcerated at Napa State Hospital and proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional violations at the Santa Clara County Jail ("SCCJ"), where he was housed as a post-arraignment pretrial detainee at various intervals between 2007 and 2012. On January 9, 2016, the Court screened plaintiff's first amended complaint ("FAC"), and found that it stated a cognizable claim for deliberate indifference to serious medical needs against SCCJ medical and supervisory staff Mark Ritchie, M.D.; Amarjit Grewal, M.D.; Beverly Purdy, M.D.; Gilda Versales, M.D.; Salma Khan, M.D; Michael Meade, M.D.; Christine Ferry, R.N.; Laurie Smith; Edward Flores; and David Sepulveda.

Plaintiff's deliberate indifference claim was also the subject of a 2009 action brought by plaintiff in this court, *Ortega v. Ritchie, at al.*, No. C 09-5527 SBA (PR). The 2009 action was dismissed without prejudice on the grounds that plaintiff failed to exhaust administrative remedies

prior to filing suit as required by the Prison Litigation Reform Act of 1995 ("PLRA"). *See* Case No. C 09-5527 SBA (PR) at Dkt. No. 94.[1]

Now before the Court is defendants' motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. Plaintiff has also filed an unsolicited sur-reply. For the reasons discussed below, the motion will be granted.

## BACKGROUND

Plaintiff contends he suffers from bi-polar disorder and schizophrenia. He asserts three cognizable claims for deliberate indifference.

First, he argues that medical staff at the SCCJ's Main Jail—Drs. Mark Ritchie, Amarjit Grewal, Beverly Purdy, Gilda Versales and Salma Khan (the "Medical Defendants")—were deliberately indifferent to his serious medical needs by delaying or denying him medical care and medications between 2007 and 2012. Second, he sues Dr. Michael Meade and nurse Christine Ferry solely for the expert declarations they submitted on behalf of the Medical Defendants in plaintiff's first lawsuit. Third, plaintiff alleges that correctional department supervisory staff—Sheriff Laurie Smith, former chief of corrections Edward Flores and Captain David Sepulveda (the "Supervisory Defendants")—were deliberately indifferent to his medical needs by promulgating policies in which inmates were delayed from receiving adequate mental health care and were required to complete "disciplinary time" before being rehoused in mental health units.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.

---

[1] The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because plaintiff was adjudicated not guilty by reason of insanity and has been involuntarily committed to Napa State Hospital, he is not a prisoner as defined by the PLRA. *See Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1240 (N.D. Cal. 2008). Therefore, the PLRA's exhaustion requirements no longer apply to plaintiff.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby,* 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder*

*v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, plaintiff's verified FAC (dkt. no. 10), and plaintiff's declaration in support of his opposition to summary judgment (dkt. no. 29-22) are considered in evaluating the motion for summary judgment.

## II.     Deliberate Indifference to Serious Medical Needs

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

Plaintiff's claims arise under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishment Clause of the Eighth Amendment because he was an arrestee or detainee at the relevant time; however, the deliberate indifference standard still applies to his medical care claim. *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (standard of deliberate indifference applicable to pretrial detainees' medical claims).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). Serious medical needs may include mental health care. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (mentally ill prisoner may establish unconstitutional treatment by showing that officials have been deliberately indifferent to his serious medical needs).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds*, *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). Mere negligence, or even gross negligence, is not enough. *Farmer*, 511 U.S. at 835–36 & n.4.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *McGuckin*, 974 F.2d at 1059. Nor does "a difference of opinion between a prisoner patient and prison medical authorities regarding treatment" amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Consequently, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference. *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1987). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an excessive risk to plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Farmer*, 511 U.S. at 837).

**III.    Analysis**

    **A.    Medical Defendants**

The following is a summary of the specific deliberate indifference allegations and timeline against the Medical Defendants contained in plaintiff's FAC:

> March 21-27, 2007: After plaintiff's arrest on March 21, 2007, Dr. Grewal denied plaintiff immediate medication; although plaintiff concedes doctors prescribed him medication by March 24, 2007. Plaintiff further contends Drs. Grewal and Khan denied him immediate mental health treatment in 8A[2], although he concedes he was admitted to "full treatment" between March 24 and 27, 2007 and that he received "15 minute checks" (FAC ¶¶ 12-13 at 5-6, ¶ 35 at 15);
>
> March 28, 2007: Dr. Grewal denied plaintiff treatment in 8A despite plaintiff being allegedly delusional (FAC ¶ 14 at 6);

---

[2] 8A is the Main Jail's acute psychiatric unit. Declaration of Dr. Meade ("Meade Decl.") ¶ 5.

5

April 30 – May 6, 2007: Dr. Khan prescribed plaintiff new medication, which plaintiff claims did not begin working until May 18, 2007 (FAC ¶ 35 at 16);

May 14-18, 2007: Plaintiff claims he suffered because Dr. Versales discharged him from 8A on May 17, 2007 "despite continue[d] presisstance (sic) [of] mental-illness (sic)." Plaintiff asserts that he was readmitted to 8A by Dr. Versales on May 18 and discharged again on May 21, 2007 (FAC ¶ 34 at 14-15);

June 29, 2007: Dr. Versales denied plaintiff mental health treatment in 8A (FAC ¶ 34 at 15);

June 30, 2007: Dr. Grewal prescribed three weeks of medication to plaintiff (FAC ¶ 15 at 7);

July 9-16, 2007: Dr. Grewal denied plaintiff treatment in 8A for his depression until July 16, 2007 (FAC ¶ 19 at 8);

July 28 – August 6, 2007; Dr. Grewal denied plaintiff treatment in 8A for full mental health treatment.  (FAC ¶ 16 at 7);

August 6-9, 2007: Plaintiff received mental health treatment in 8A (FAC ¶ 16 at 7);

September 30 – October 2, 2007: Plaintiff received mental health treatment in 8A (FAC at p. 7 ¶ 17);

October 7, 2007: Plaintiff received mental health treatment in 8A for "untreated mental health delusions" (FAC ¶ 18 at 7-8);

November 8 – December 3, 2007: Dr. Khan denied plaintiff mental health treatment in 8A (FAC ¶ 35 at 17);

December 4, 2007 – July 15, 2008: Plaintiff was not in county custody;

July 16 – September 3, 2008: Upon his return from Metropolitan State Hospital, Dr. Grewal denied plaintiff treatment in 8A; although Dr. Grewal prescribed plaintiff medication, plaintiff alleges the dose was too low (FAC ¶¶ 20-21 at 8);

August 12-15, 2008: Plaintiff alleges he was suicidal because he did not receive his "p.m. medications for three days" from Dr. Ritchie (FAC ¶ 31 at 11-12);

August 15, 2008: Plaintiff suffered delusions, and Dr. Ritchie denied him full mental health treatment and care on 8A (FAC ¶ 31 at 11-12);

August 13-19, 2008: Plaintiff claims he suffered a two-day adjustment while he acclimated and waited "for medications to work or take effect" (FAC ¶ 32 at 12);

October 14, 2008 – February 25, 2009: Plaintiff was not in county custody;

February 26, 2009 – March 5, 2009: Upon his return from Patton State Hospital, plaintiff suffered due to low medication dosages from Drs. Grewal and Ritchie, although he concedes he was receiving "full mental health care on 8-A" between March 2 and 5, 2009 (FAC ¶¶ 23, 26 at 9-10);

April 9-10, 2009: Plaintiff concedes he refused an appointment with Dr. Ritchie because he was "stable on his housing and medications" (FAC ¶ 27 at 10);

April 9 – June 8, 2009: Plaintiff suffered when his "medications started not to work" (FAC ¶ 28 at 10);

May 5, 2009: Plaintiff contends he was delusional and unstable due to Dr. Purdy decreasing his medications; contends he submitted an Inmate Grievance Form to see a doctor (FAC ¶ 33 at 12-13);

May 6-9, 2009: Plaintiff admitted for full mental health care in 8A; contends he was improperly discharged on May 9, 2009 by Drs. Purdy and Ritchie (FAC ¶ 24 at 9, ¶ 33 at 13);

May 7 – June 8, 2009, Dr. Purdy admitted plaintiff for full treatment in 8A but adjusted plaintiff's medications making him more "unstable" (FAC ¶ 33 at 13);

June 8-10, 2009: Plaintiff received treatment in 8A, but Dr. Ritchie released him on June 10, 2009.  He also contends his Seroquel medication was stopped.  (FAC ¶ 29 at 11);

December 29, 2009: Plaintiff concedes his medications "were good," but claims he was denied full treatment in 8A (FAC ¶ 30 at 11);

January 12, 2010: Plaintiff returned from Patton State Hospital (FAC ¶ 25 at 9);

January 12-14, 2010: Plaintiff was admitted to 8A, but Dr. Grewal released him on January 14, 2010 (FAC ¶ 25 at 9);

January 25 – February 8, 2012: Dr. Ritchie admitted plaintiff on a 14-day involuntary hold due to plaintiff's danger to others, and plaintiff admits he was "serverely (sic) suffering[,] voices, racing thoughts, depression" (FAC ¶ 32 at ¶ 32).

The Court assumes for purposes of this motion that plaintiff had a serious medical need.  The record, however, amply demonstrates that the Medical Defendants provided plaintiff adequate care.  Plaintiff routinely received ongoing care and treatment during the times he was detained at SCCJ.  Meade Decl. ¶¶ 9-98.  These included routine mental health assessments, treatment and medications.  *See id.*  Plaintiff received routine follow-up care when his medications were adjusted (*see, e.g.*, *id.* ¶¶ 79, 88-90) and received immediate psychiatric treatment in 8A when indicated by his own complaints, or when referred by nursing and correctional staff (*see, e.g.*, *id.* ¶¶ 43, 64, 77).

7

Plaintiff himself has submitted reams of exhibits in this action documenting a great deal of care, including regular health care visits and psychiatric assessments at SCCJ.

Defendants have submitted a declaration from Michael Meade, M.D., a physician certified by the American Board of Psychiatry and Neurology and a qualified medical examiner with the State of California. Meade Decl. ¶ 1. Dr. Meade reviewed and analyzed all of the medical records from Santa Clara County Adult Custody Mental Health Services and concluded that the evaluation, diagnosis, care, treatment, and advice rendered to plaintiff by the Medical Defendants and other staff complied with the applicable standard of care for psychiatric medicine practitioners and does not evidence indifference by mental health staff. *Id.* ¶¶ 3, 4. Dr. Meade further concluded that the medications (both types and dosages) prescribed for plaintiff by the Medical Defendants and other staff complied with the applicable standard of care for psychiatric medicine practitioners. *Id.* ¶ 6.

Dr. Meade found no indication whatsoever that the Medical Defendants denied plaintiff access to mental health treatment. *Id.* ¶ 5. Rather, according to Dr. Meade, plaintiff was routinely monitored and evaluated by mental health staff. *Id.* He received medically acceptable mental health treatment, including through psychiatric holds under California Welfare and Institutions Code section 5150.[3] *Id.* Evaluation of such holds occurs within the main jail in unit 8A, which is the main jail's acute psychiatric treatment facility. *Id.* Dr. Meade found no indication that plaintiff was denied treatment in 8A when such acute treatment was called for by plaintiff's symptoms and behaviors. *Id.*

Plaintiff has failed to come forward with specific facts to support a finding to the contrary, let alone a finding of deliberate indifference to his medical needs. He has set forth no evidence showing that the course of treatment the Medical Defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi*, 391 F.3d at 1058. Plaintiff's desire to have his medications

---

[3] Pursuant to California Welfare and Institutions Code section 5150, mental health staff is required to implement an inpatient psychiatric hold for *up to* 72 hours for any inmate determined to be a danger to others, danger to self or gravely disabled, for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in another facility.

adjusted or to spend more time in the acute treatment facility, without more, does not create a triable issue of fact as to whether such treatment was medically necessary. *See Jackson*, 90 F.3d at 332; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim.")

Considering the evidence in the light most favorable to plaintiff, the Court finds plaintiff fails to raise a triable issue of material fact as to whether the Medical Defendants were deliberately indifferent to plaintiff's serious medical needs. Accordingly, summary judgment will be granted as to defendants Drs. Ritchie, Grewal, Purdy, Varsales and Khan.

### B. Defendants Meade and Ferry

Plaintiff does not allege that defendants Dr. Meade or Nurse Ferry provided him inadequate health care at SCCJ. Rather, plaintiff sues Dr. Meade and Nurse Ferry based solely upon the testimony (through sworn declarations) that they submitted in plaintiff's earlier lawsuit, No. C 09-5527 SBA (PR). *See* FAC ¶¶ 36-41; Pl.'s. Opp'n Summ. J. Exs. D1, E1.

Both private individuals and government officials who serve as witnesses are absolutely immune from suit for damages with respect to their testimony. *Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001) ("Witnesses, including police witnesses, are accorded absolute immunity from liability for their testimony in judicial proceedings.") Because they are protected by absolute immunity, summary judgment will be granted as to defendants Dr. Meade and Nurse Ferry.

### C. Supervisory Defendants

Plaintiff also alleges that defendants Smith, Flores, and Sepulveda are liable in their capacity as supervisors. Specifically, plaintiff alleges that the Supervisory Defendants maintained policies by which (1) the main jail medical staff delayed in providing adequate mental health care to inmates; and (2) inmates with mental health issues were required to complete "disciplinary time" before they could be housed in an acute care step-down ward. FAC ¶¶ 62, 63 at 29-31.

Plaintiff has produced no evidence of any such policies. Further, defendants have submitted the official policies regarding mental health and medical treatment for inmates at SCCJ, which policies contradict plaintiff's allegations. *See* Declaration of David Sepulveda ("Sepulveda

9

Decl.") Exs. A-F.  Specifically, defendants submit evidence of policies that provide numerous avenues for inmates, such as plaintiff, to receive timely and adequate mental health treatment.  *See id.*

Finally, defendants submit evidence that plaintiff never served time in disciplinary housing while at SCCJ.  *See* Declaration of Thomas Duran ("Duran Decl.") ¶ 8.  Outside of medical or mental health housing, the only housing units plaintiff was confined to were general housing and administrative segregation.  *Id.*  Administrative segregation is different from disciplinary housing in that administrative segregation is not used to punish inmates.  *Id.*  Administrative segregation is assigned to inmates who are prone to escape, prone to assaulting staff or other inmates, or likely to need protection from other inmates.  *Id.* ¶ 11.  Plaintiff did not remain in administrative segregation during his entire stay at the main jail, but he was assigned to administrative segregation at times due to his history of being the target of assaults and his own assaultive behavior, including stabbing a correctional officer at another facility, physically assaulting corrections officers at the main jail, threatening to harm correctional officers, and increased altercations with and aggressive behavior toward other inmates.  *Id.* ¶ 12.  Plaintiff admits that he had assaulted officers and was a "high risk candidate for suicide and assaultive behavior."  FAC ¶ 61 at 29; Pl's Decl. ¶¶ 5-6 at 3-5.  Conditions in administrative segregation at the main jail result in little deviation from the conditions imposed on inmates in general housing to the extent possible.  Duran Decl. ¶ 11.

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

It is well-established that in order to defeat summary judgment, a plaintiff must come forward with significantly probative evidence from which a jury could reasonably render a verdict in his favor.  *See Liberty Lobby*, 477 U.S. at 249-52; *In re Oracle Corp. Sec. Litigation*, 627 F.3d.

376, 387 (9th Cir. 2010). Plaintiff has not. His mere allegations regarding policies that are unfair to mentally ill inmates are simply not enough to show a genuine dispute.

In any event, as discussed above, plaintiff has failed to raise a triable issue of material fact that he was subjected to constitutionally inadequate medical care. Therefore, plaintiff has failed to produce sufficient evidence regarding an essential element of his supervisory liability claim, i.e., an underlying constitutional violation. Accordingly, the Court finds that defendants Smith, Flores, and Sepulveda are not liable, as supervisors, for deliberate indifference, and they are entitled to summary judgment.[4]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk shall enter judgment for defendants and close the file.

This order terminates Docket No. 23.

**IT IS SO ORDERED.**

Dated: 2/27/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Because the Court finds all defendants are entitled to summary judgment on the merits of plaintiff's Eighth Amendment claims, it need not address defendants' alternative argument that the claims are also untimely.

11